UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X
UNITED STATES OF AMERICA,       :
                                       S1 06 Cr. 1064 (JFK)
          -against-             :
                                       MEMORANDUM OPINION
TYRONE LASTER,                  :          and ORDER

          Defendant.      :
------------------------------X

**JOHN F. KEENAN, United States District Judge:**

## Background

      The defendant is charged in a one-count Indictment with
possession of a firearm that traveled through interstate commerce
after having previously been convicted of a felony in violation
of Title 18, United States Code, Section 922(g)(1) and 924(e).
He moved to suppress the gun and his statement to a New York City
Police Officer concerning the gun.  A hearing on the Motions to
Suppress was held before me on June 6, 2007.

## Facts

      At the hearing, the Government called two witnesses:
Police Officer Douglas Vincent and Detective Robert J. Mancini.
At the outset, I note that the Government failed to ask either
officer to identify the defendant.  The troubling omission was
rendered harmless in this case, because the defendant's April 23,
2007 declaration in support of the motion was formally introduced
by the defendant at the hearing (Tr. 47).[1]  In addition, each

---

    [1] "Tr." refers to the transcript page of the hearing
minutes.

officer referred to the subject of the activity at Apartment 6D, 1471 Watson Avenue, Bronx, New York as the defendant (Tr. 17, 41).  Thus, the Court is able to find that Mr. Laster is the defendant who was the subject of the hearing.  Nevertheless, the Court does not understand why the Government proceeded as it did. It is a far better practice for the witness to identify the defendant and not to proceed in the fashion followed here.

Police Officer Vincent believably testified that on the morning of September 26, 2006, he interviewed Jeanette Santos at the 43rd Precinct Station house and was told there was a man, Tyrone Laster, at her apartment.  She said the man was a distant family member and that his behavior was menacing and that he was brandishing a firearm.  She also said he had a long criminal history and "may be wanted for a crime in Mississippi" (Tr. 5, 6).  Ms. Santos wanted the man removed from the apartment and she signed a written consent for Officer "Vincent to authorize forced search of [her] apartment 6D in 1471 Watson Ave." (Tr. 9, 10, GX1 at hearing).

The Emergency Services Unit ("ESU") of the Police Department was contacted.  Officers from that Unit responded to the address and Officer Vincent met them and Detective Mancini of Emergency Services there (Tr. 13, 14).  Officer Vincent went outside the building and heard a police radio transmission that

-2-

ESU Officers had entered the apartment and that "he is going out the window" (Tr. 16).

Detective Robert J. Mancini of ESU credibly testified that on the morning of September 26, 2006, he went to 1471 Watson Avenue, which is in the Bronx, and that after he entered the apartment, he heard the radio message that there was a man on the fire escape.  Other ESU Officers brought the man back through the window into the apartment (Tr. 35, 36).  The man was handcuffed and frisked and placed on his knees.  The "quick frisk of the waistband" uncovered nothing and defendant was asked "if he had a weapon, if he did where was the weapon."  He said the gun was in his rear pants pocket and Mancini reached into the pocket and removed an automatic handgun (Tr. 37).

Officer Vincent returned to the building and received the gun, a .25 calibre automatic pistol from Detective Mancini (Tr. 18, 19, GX2).  Mancini also gave Vincent a bullet that was recovered from the gun (Tr. 23).  I accept the testimony of the police officers as truthful.

## Discussion

The police obviously had permission from the legal resident of the apartment, Ms. Santos, to enter and search the apartment.  The exigent circumstances here did not require the police to knock on the door and announce their presence before entering.  The defendant's own declaration corroborates that when

the officers entered the apartment, he tried to flee by going out the window to the fire escape and that he was grabbed and handcuffed (Laster Declaration, ¶¶ 5,6).  There is no contention by defendant that he on September 26, 2006 voiced any objection to the search of the apartment.  The entry and search of the apartment was authorized under United States v. Matlock, 415 U.S. 164 (1974) and Georgia v. Randolph, 547 U.S. 103 (2006).  The protective search of defendant after he tried to flee and while the police were in possession of information that he had a gun was perfectly justified.  United States v. Martinez-Gonzalez, 686 F.2d 93 (2d Cir. 1982).

The "public safety" exception to the Miranda warning requirements was first enunciated by the Supreme Court in New York v. Quarles, 467 U.S. 649 (1984) and has been recognized in Second Circuit law.  United States v. Reyes, 353 F.3d 148 (2d Cir. 2003), United States v. Estrada, 430 F.3d 606 (2d Cir. 2005).

It was the duty of the police to ascertain the whereabouts of the gun in this case to protect the safety of the officers and the public safety.  The way for them to accomplish this was for them to ask where the gun was.  This is what they properly and understandably did.

The motions are denied in all respects.

**SO ORDERED.**

Dated: New York, New York
       June 26, 2007

**JOHN F. KEENAN**
**United States District Judge**

-5-